UNITED STATES DISTRICT COURT
MIDDLE DISTRICT OF FLORIDA
TAMPA DIVISION

HEIDI M. STEPHENS, M.D.,

    Plaintiff,

v.                                                                 CASE NO. 8:17-cv-53-T-23AAS

BOARD OF TRUSTEES OF THE
UNIVERSITY OF SOUTH FLORIDA,

    Defendant.
_____/

**ORDER**

Heidi M. Stephens, M.D., sues (Doc. 30) the Board of Trustees of the University of South Florida under Title VII and the Equal Pay Act. In response to the defendant's motion (Doc. 43) for summary judgment, Stephens correctly concedes (Doc. 47) that her Title VII claim is time-barred. Under 42 U.S.C. § 2000e-5(e)(1), a plaintiff in a deferral state such as Florida must file a charge of discrimination with the Equal Employment Opportunity Commission no more than three hundred days after the employer notifies the employee of the adverse employment decision. *Del. State Coll. v. Ricks*, 449 U.S. 250, 258–59, 101 S.Ct. 498, 505, 66 L.Ed.2d 431 (1980); *E.E.O.C. v. Joe's Stone Crabs, Inc.*, 296 F.3d 1265, 1271 (11th Cir. 2002). Stephens' limitation began on September 9, 2015, when Stephens' supervisor, Roy Sanders, M.D., informed Stephens by letter of a new pay model that she alleges was discriminatory. Stephens submitted an EEOC

charge 310 days later on July 15, 2016. USF is entitled to summary judgment on Stephens' unmistakably time-barred Title VII claim.

Stephens' Equal Pay Act claim remains, and USF moves (Doc. 43) for summary judgment. Because USF did not subject Stephens to different pay for equal work, and alternatively because USF shows without genuine factual dispute that attempted budget balancing — which qualifies for the Equal Pay Act's "factor other than sex" exception — explains any pay differential, the motion is granted.

## BACKGROUND

Stephens works at USF's Morsani College of Medicine as an orthopaedic surgeon. She is a member of Morsani's clinical faculty, and she began her employment in 1993 in the Department of Orthopaedics and Sports Medicine. Stephens briefly practiced in the Department of Surgery but returned to the Orthopaedics Department in 2011.

In 2014, USF began recruiting new leadership to reverse Morsani's significant budget deficits, particularly in faculty compensation. (Doc. 44-12 at 4) As part of that turnover, USF hired Sanders in March 2015 to lead the Orthopaedics Department. With support from Morsani leadership, Sanders revised the Orthopaedics Department's compensation in order to mitigate financial losses. (Doc. 44-9 at 19–20)

USF compensates clinical faculty through a three-component salary. The University Contracted Salary (UCS), which is fixed and non-discretionary, typically

constitutes most of a faculty member's salary.  Also, faculty members can receive supplementary compensation from the Academic Support Fund (ASF).  Unlike UCS, ASF is a "non-guaranteed, variable component" of clinical faculty salary.  (Doc. 44-16 at 2, 44-3 at 37–38)  Each department chair retains discretion to disburse ASF compensation "subject to the individual faculty member's achievement of performance criteria and goals."  (Doc. 44-16 at 2, 44-3 at 37–38)  Further, a faculty member with administrative responsibilities can receive compensation through an administrative stipend.  For instance, Stephens annually earned $30,000 for serving on USF's Medical Directors Committee until USF discontinued both her role and her stipend in March 2015.  Also, chairing the Billing Integrity Advisory Committee until October 2017, Stephens received an annual administrative stipend until August 2015, when USF replaced the annual disbursement with a maximum of $15,000 in hourly compensation each year.

To balance faculty compensation in the Orthopaedics Department, Sanders in 2015 implemented the "Eat What You Kill" formula.  Before September 2015, an Orthopaedics Department clinical faculty member received ASF compensation regardless of each member's revenue generation.  "Eat What You Kill" conditioned ASF disbursement on each member's generating enough revenue to cover the member's overhead.  In other words, exercising his discretion in ASF compensation, Sanders offered an incentive to each member of the Orthopaedics Department faculty to practice self-sufficiently.

Before the formula, Stephens received $8,866.42 each month in ASF compensation. In the first month, "Eat What You Kill" obligated Stephens to generate $51,929.00 in order to maintain her $8,866.42 ASF payment. In the same time and under the same formula, Stephens' four male Orthopaedics Department colleagues respectively needed to collect $62,148.00 to earn $24,553.00 in ASF pay; $53,220.00 to earn $35,544.99; $56,000.00 to earn $22,500.00; and $50,027.00 to earn $20,000.00. Some of Stephens' male colleagues occasionally failed to reach the collection targets. In contrast, Stephens, a historically poor revenue generator, failed to generate enough revenue to cover her overhead expenses in every month but one.

## DISCUSSION

A plaintiff establishes a prima facie Equal Pay Act violation by showing that the employer "pays different wages to employees of opposite sexes 'for equal work on jobs . . . [requiring] equal skill, effort, and responsibility, and which are performed under similar working conditions.'" *Corning Glass Works v. Brennan*, 417 U.S. 188, 195, 94 S.Ct. 2223, 2228, 41 L.Ed.2d 1 (1974) (quoting 29 U.S.C. § 206(d)(1)). However, the Equal Pay Act permits a difference in pay that results (1) from a seniority system, (2) from a merit system, (3) from a system of which measures earnings by quantity or quality of production, or (4) from a differential based on any factor other than sex. *Corning Glass Works*, 417 U.S. at 196–97, 94 S.Ct. at 2229. If the employer establishes an exception by a preponderance of the evidence, the plaintiff must show by affirmative evidence that the proffered exception is either

pretext or a post-event justification. *Schwartz v. Fla. Bd. of Regents*, 475 F.2d 1041, 1045 (11th Cir. 1991) (per curiam).

Stephens' complaint states that "[o]n or about September 19, 2015, [USF], through its agent, [Sanders], removed from [Stephens] all of her teaching, research, and administrative duties and reduced [her] compensation from $386,000.00 to $83,000.00 a year." (Doc. 30 at ¶ 4) Listing the four male Orthopaedics Department clinical faculty members as comparators, the complaint adds, "[USF] compensates [Stephens] . . . at a rate lower than which it compensates [her] male colleagues. Such action violates [Stephens'] rights under the [Equal Pay Act]." (Doc. 30 at ¶¶ 12–13)

Stephens' threadbare allegations do not plainly identify the means by which USF differently paid Stephens for the same work as her male colleagues. She might assert any one of at least three theories. Perhaps Stephens contends that USF violated the Equal Pay Act by paying her less than half of her male colleagues' ASF compensation. (Doc. 47 at 3) If she raises that argument, USF correctly replies that Stephens impermissibly raises a new claim because Stephens' basis — the ASF pay differential — both predates September 2015[1] and falls considerably short of the

---

[1] A 2008 settlement agreement between Stephens and USF fixed Stephens' monthly ASF at $13,500.00. But the record provides no indication of who decreased Stephens' ASF pay to $8,866.42, no indication of when her ASF pay decreased, and no indication of why her ASF pay decreased. There lies the problem with asserting a new claim in a motion for summary judgment. The purpose of the rule requiring "a short and plain statement of the claim showing that the pleader is entitled to relief" is to notify the defendant of the claim and of the grounds on which the claim rests. *Conley v. Gibson*, 355 U.S. 41, 47, 78 S.Ct. 99, 103, 2 L.Ed.2 80 (1957). A well-pleaded complaint activates generous discovery rules that permit definition of the disputed facts and issues. *Swierkiewicz v. Sorema N.A.*, 534 U.S. 506, 512, 122 S.Ct. 992, 998, 152 L.Ed.2d 1 (2002). In this instance, the parties dedicated most of their attention in discovery to the time-barred Title VII claim and to the events of September 2015.

alleged $303,000 difference.  *See Flintlock Const. Servs., LLC v. Well-Come Holdings*, 710 F.3d 1221, 1226–27 (11th Cir. 2013) (holding that introducing in a summary judgment motion a new theory for relief impermissibly amends a claim).

Alternatively, Stephens might argue that "Eat What You Kill" paid her differently by setting her collection target higher than her male colleagues' collection targets.  (Doc. 47-4)  Not only is Stephens' premise generally untrue,[2] her argument misconstrues the purpose of "Eat What You Kill," which did not fix any clinical faculty member's income but determined whether a clinical faculty member would receive ASF compensation at all.  Surpassing a collection target had no bearing on the amount or rate of a clinical faculty member's compensation.  (Doc. 44-9 at 23)

Also, Stephens might argue that USF paid her unequally by removing her administrative stipends.  (Doc. 47 at 2)  For the same reasons as the ASF difference theory, the argument appears barred as a new claim.[3]  Additionally, the theory necessarily concedes that Stephens work did not equal the work of her male colleagues.  The issue of "equal work" examines "job content — the actual duties the respective employees are called upon to perform." *Waters v. Turner, Wood & Smith Ins. Agency, Inc.*, 874 F.2d 797, 799 (11th Cir. 1989) (per curiam) (quoting *Pearce v. Wichita*

---

[2] "Eat What You Kill" set Stephens' collection target lower than all but one of her male colleagues' collection targets. (Doc. 44-16 at 51–55)

[3] USF relieved Stephens of her Medical Directors Committee duties on March 24, 2015, and notified her on August 18, 2015, of its plan to compensate hourly her Billing Integrity Advisory Committee responsibilities. (Doc. 44-3 at 42–43) In 2015, Stephens' stipends for serving on the Medical Directors Committee and the Billing Integrity Advisory Committee totaled $93,833.76. (Doc. 44-16 at 10)

*Cty., City of Wichita Falls, Tex., Hospital Bd.*, 590 F.2d 128, 133 (5th Cir. 1979)). The work need not be identical, only substantially equal. *Miranda v. B & B Cash Grocery Store, Inc.*, 975 F.2d 1518, 1533 (11th Cir. 1992). But Stephens' argument about the termination of her administrative stipends — compensation for non-clinical work — renders invalid a comparison between Stephens and her male colleagues. Stephens spent half her time on non-clinical work; her male colleagues spent all their time on clinical work.

USF has established that no genuine issue of material fact exists and that Stephens fails to sufficiently show that USF paid her differently for equal work. *See Celotex Corp. v. Catrett*, 477 U.S. 317, 323, 106 S.Ct. 2548, 2552, 91 L.Ed.2d 202 (1986).

The undisputed facts show both that USF, faced with financial deficits and closure of the Orthopaedics Department, instituted financial reform and — because of "Eat What You Kill" — the reform resulted in Stephens' loss of both administrative stipends and ASF salary. The record provides continuous, corroborated, and undisputed support for USF's budgetary explanation, and Stephens presents no evidence suggesting that USF's reforms were pretextual, were developed as a justification after the fact, or otherwise were aimed at her in particularly or at women in general.

## CONCLUSION

USF's motion (Doc. 43) for summary judgment is **GRANTED**. The clerk is directed (1) to enter judgment for the Board of Trustees of the University of South Florida and against Heidi M. Stephens on each count, (2) to terminate any pending motion, and (3) to close the case.

ORDERED in Tampa, Florida, on October 4, 2018.

STEVEN D. MERRYDAY
UNITED STATES DISTRICT JUDGE